# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Andrea M.,[1]

        Plaintiff,                      Case No.  25-cv-1577 (ECT/LIB)

  v.                               **REPORT AND RECOMMENDATION**

Frank Bisignano,
*Commissioner of Social Security Administration*,

        Defendant.

Plaintiff, Andrea M. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") to terminate her disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief request reversal of the Commissioner's final decision and remand to the Social Security Administration. [Docket No. 9]. Defendant filed a brief asking this Court to affirm the underlying decision terminating Plaintiff disability benefits and to dismiss this action. [Docket No. 10].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name only her first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 9], be **DENIED** and Defendant's request for relief, [Docket No. 10], be **GRANTED**.

## I.  Background

In a determination dated May 27, 2004, Plaintiff was found to be disabled by the Commissioner of the Social Security Administration. (Tr. 19, 201, 273).[2] It was determined that Plaintiff was disabled and entitled to "benefits for intellectual disability based on an equaling of a listing," i.e., Listing 12.05. (Tr. 19, 203, 273).[3] It was further determined that her disability began on January 1, 2004. (Tr. 201). Plaintiff thus began receiving benefits.

On July 22, 2019, the Commissioner determined that Plaintiff's benefits should cease because Plaintiff was no longer disabled and had not been disabled since July 1, 2019. (Tr. 195, 201). On August 6, 2019, Plaintiff requested reconsideration of the July 22, 2019, decision to cease her benefits. (Tr. 235–267). On February 11, 2020, a disability hearing officer upheld the decision to cease Plaintiff's benefits. (Tr. 283). On March 19, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 293–295).

On November 9, 2021, Administrative Law Judge Jeffrey Hart (hereinafter "ALJ") conducted a hearing at which Plaintiff was represented by legal counsel. (Tr. 54–82). Plaintiff along with Thomas Heiman, an independent vocational expert, and Kevin Schumacher, a medical expert, testified at the hearing. (Tr. 54–82). The ALJ issued an unfavorable decision on

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 7], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

[3] The May 27, 2004, decision is not contained within the record. Nevertheless, the record reflects, and the parties agree, that the disability determination in Plaintiff's favor at that time was based on a finding that Plaintiff's impairments met or medically equaled Listing 12.05 and Plaintiff was therefore presumptively disabled. (Tr. 19; Plf.'s Mem. [Docket No. 9] at 5; Def.'s Mem. [Docket No. 10] at 2).

December 14, 2021, (Tr. 198–221), but that Appeals Council later remanded the case back to the ALJ on October 4, 2022. (Tr. 222–230).

The ALJ conducted a second hearing on June 16, 2023, and a third hearing on February 28, 2024. (Tr. 84–176). At each hearing, Plaintiff was represented by legal counsel. (Tr. 84–176). Plaintiff along with a medical expert and an independent vocation expert testified at each hearing, although the medical expert and vocation expert were different at each hearing. (Tr. 84–176).

On March 20, 2024, the ALJ issued a decision finding that Plaintiff's disability had ceased on July 1, 2019. (Tr. 14–32). The ALJ further determined that Plaintiff had not again become disabled since July 1, 2019. (Tr. 14–32).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 586–287). Subsequently, on February 25, 2025, the Appeals Council denied Plaintiff's request for review. (Tr. 1–6). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On April 18, 2025, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 9, 10], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Continuing Review

Once an individual becomes entitled to disability benefits, her continued entitlement to benefits may be reviewed periodically to determine if her disability continues. 20 C.F.R. § 404.1594; see also 42 U.S.C. § 423(f)(1). To determine whether a claimant's disability has continued and whether she is entitled to continued benefits, a Continuing Disability Review

3

("CDR") is initiated by the Commissioner. See 20 C.F.R. § 404.1589. If the Commissioner ceases disability benefits based on a determination that the claimant's disability has ceased and the claimant has regained the ability to work, the claimant may request reconsideration by the Commissioner of the decision. 20 C.F.R. § 404.907. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine upon continuing review whether a claimant's disability has ceased, the administrative law judge must follow an eight-step sequential analysis. This analysis requires the administrative law judge to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2008). The Eighth Circuit has described this eight-step process as follows:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of [her] past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Id. at 945–46; see Koch v. Kijakazi, 4 F.4th 656, 661–62 (8th Cir. 2021) (citing Dixon v. Barnhart, 324 F.3d 997, 1000–01 (8th Cir. 2003)).

The question regarding "medical improvement" requires the ALJ "to compare a claimant's current condition with the condition existing at the time the claimant was [most recently] found disabled and awarded benefits." Id. at 945. Medical improvement is defined as

4

"any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that" the claimant was "disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1).

### B.  Appeals Council Review

If the claimant is dissatisfied with the administrative law judge's decision, the claimant may request review by the Appeals Council, although the Appeals Council is not required to grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In the present case, the Appeals Council declined to review the ALJ's most recent decision finding that Plaintiff's disability ended on July 1, 2019, and that Plaintiff had not again become disabled since that date. (Tr. 1–6).

### C.  Judicial Review

If a claimant remains dissatisfied with the final decision of the Commissioner following the resolution of claimant's request for review to the Appeals Council, the claimant may seek judicial review in federal court. Judicial review of the administrative decision generally proceeds by considering the decision of the administrative law judge at each of the eight steps discussed above.

Judicial review of the Commissioner's decision (through the administrative law judge) to cease disability benefits, however, is constrained to a determination of whether the decision is

supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the administrative law judge. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the administrative law judge's finding merely because evidence exists in the administrative record to support a conclusion contrary to the Commissioner's findings. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the administrative law judge's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Thus, the Court will not reverse the administrative law judge's decision "so long as the [administrative law judge's] decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the administrative law judge "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id.

A claimant has a continuing burden to demonstrate that she remains disabled, and the Court cannot draw any inference from the fact that benefits were previously granted. Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991). "Once the claimant meets this initial responsibility" of demonstrating that she is disabled, "the burden shifts to the Secretary to demonstrate that the claimant is not disabled." Id. (citing Lewis v. Heckler, 808 F.2d 1293, 1297 (8th Cir. 1987)). "If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work." Id. (citing 20 C.F.R. § 404.1594(b)(2)–(5)).

**III. Decision Under Review**

Before beginning the sequential analysis, the ALJ concluded that the most recent favorable decision finding that Plaintiff continued to be disabled was a May 27, 2004, determination. (Tr. 19). Plaintiff does not challenge this conclusion. This May 27, 2004, determination is referred to as a "comparison point decision."

The ALJ then made the following determinations during the eight-step disability evaluation process.

At step one, the ALJ implicitly concluded that Plaintiff was not then-currently engaged in substantial gainful activity. (See Tr. 22–23). Plaintiff does not challenge this finding.

At step two, the ALJ concluded that Plaintiff's impairments no longer met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 12.05. (Tr. 19–26). Plaintiff challenges the ALJ's findings at step two.

At step three, the ALJ concluded that Plaintiff had experienced "medical improvement." (Tr. 26). Specifically, the ALJ the determined that the medical evidence "supports a finding that, by July 1, 2019, there had been a decrease in medical severity of [Plaintiff's] impairments," because the medical evidence no longer supports a finding that Plaintiff's impairments demonstrate "a listing level of impairment under section 12.05." (Tr. 26). Plaintiff does not directly challenge this finding regarding whether medical improvement occurred, although Plaintiff does indirectly challenge the ALJ's determination that Plaintiff's impairments no longer equaled Listing 12.05.

At step four of sequential analysis, the ALJ determined that Plaintiff's medical improvement was related to her ability to work. (Tr. 26). Plaintiff does not directly challenge this finding.[4]

At step six of the sequential analysis, the ALJ determined that Plaintiff continued to have impairments which were severe. (Tr. 27). The ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and seizure disorder. (Tr. 27). Plaintiff challenges this determination by the ALJ.

The ALJ then made the following RFC determination:

> [C]laimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to dangers to life or limb in the workplace; not required to work in high, exposed places; work is limited to simple, routine, repetitive tasks; occasional changes in the work setting; no public interaction; brief and superficial interaction with coworkers and supervisors, meaning the 5th digit of the DOT code is a "7" or "8"; no complex decision making; and no rapid assembly-line type paced work, meaning daily quotas but not hourly quotas.

---

[4] Because the ALJ determined that there had been medical improvement and that the medical improvement was related to Plaintiff's ability to work, the ALJ moved to step six of the sequential analysis. See Delph, 538 F.3d at 945 (providing that step five applies only if no medical improvement is found or the medical improvement is not related to the claimant's ability to work).

(Tr. 27). The ALJ concluded that Plaintiff had this RFC since July 1, 2019. (Tr. 27). Plaintiff challenges this RFC determination made by the ALJ.

In reaching this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 28). The ALJ, however, concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of" the symptoms experienced during the relevant period "are not entirely consistent with the objective medical evidence and other evidence for the reasons explained in [the ALJ's] decision." (Tr. 28). Plaintiff does not challenge this credibility determination by the ALJ.[5]

At step seven of the sequential analysis, the ALJ concluded that Plaintiff did not have any past relevant work. (Tr. 31). Plaintiff does not challenge this finding.

At step eight, the ALJ found that since July 1, 2019, there were other jobs that existed in significant numbers in the national economy which Plaintiff could perform within the ALJ's RFC determination. (Tr. 31–32). Relying upon testimony from the independent vocational expert, the ALJ specifically found that the occupations Plaintiff would be able to perform were "laundry worker" of which there are 134,000 positions in the national economy; "janitor" of which there are 1,700,000 positions in the national economy; and "store laborer" of which there are 392,000 positions in the national economy. (Tr. 32). Although Plaintiff does not directly

---

[5] "Social Security Ruling 16-3p eliminates use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). Although SSR 16-3p eliminated the use of the term "credibility," the elimination "largely changes terminology rather than the substantive analysis to be applied," and in discussing said analysis, Courts have continued to use the "credibility" terminology. Noerper, 964 F.3d at 745 n.3; see Terra M. v. Colvin, No. 23-cv-3849 (NEB/DLM), 2025 WL 593785, at *10 (D. Minn. Jan. 10, 2025), report and recommendation adopted sub nom. Terra M. v. Dudek, 2025 WL 591166 (D. Minn. Feb. 24, 2025); Ricky T. v. Kijakazi, No. 20-cv-2088 (LTS), 2023 WL 2664741, at *5 (N.D. Iowa Mar. 28, 2023).

challenge this finding, Plaintiff implicitly challenges this finding to the extent it is based on the ALJ's RFC determination which Plaintiff does challenge.

Based on his finding at each of the steps of the sequential analysis, the ALJ ultimately concluded that Plaintiff's disability ended on July 1, 2019, and he further concluded that Plaintiff had not again become disabled since July 1, 2019.

## IV. Analysis

Plaintiff asserts three overarching arguments in her appeal of the ALJ's decision. (See Plf.'s Mem. [Docket No. 9]). Plaintiff first argues that the ALJ erred at step four of the sequential analysis by failing to identify all severe impairments. (Id. at 19–20).[6] Plaintiff also argues that reversal of the Commissioner's decision is warranted because the ALJ failed to adequately address why Plaintiff no longer equals Listing 12.05. (Id. at 21–22). Finally, Plaintiff argues that the ALJ erred in failing to assess all medical opinions in the record. (Id. at 22–23).

Defendant contends that each of Plaintiff's arguments is unavailing and that the ALJ's decision is supported by substantial evidence. (See Def.'s Mem. [Docket No. 10]). On that basis, Defendant asks this Court to affirm the ALJ's decision. (See Id.).

### A. Severe Impairments

As noted above, Plaintiff first argues that the ALJ erred in failing to identify all Plaintiff's severe impairments. (See Plf.'s Mem. [Docket No. 9] at 19–20). Specifically, Plaintiff argues that the ALJ's analysis of Plaintiff's severe impairments lacked any discussion of whether Plaintiff's rheumatoid arthritis was a severe impairment. (Id. at 20). Plaintiff contends her rheumatoid arthritis qualifies as a severe impairment because it "was diagnosed by an acceptable

---

[6] Plaintiff incorrectly refers to the ALJ's discussion regarding severity as occurring at step two. (See Id.). Although the severity of a claimant's impairments is discussed at step two of the more typical five-step sequential analysis, the determination of severity occurs at step six of the eight-step sequential analysis used in reviewing a cessation of benefits. See Delph, 538 F.3d at 945. And Plaintiff agrees that the eight-step sequential analysis applies in the present case. (See Plf.'s Mem. [Docket No. 9] at 3–4).

10

medical source, requires significant medical intervention in the form of injectable medications, and records support functional impairments in the bilateral hands." (Id. at 20).

In making this argument, however, Plaintiff ignores the ALJ's discussion regarding Plaintiff's severe impairments. Despite Plaintiff's assertion to the contrary, the ALJ discussed the symptoms and treatment records related to Plaintiff's rheumatoid arthritis, as well as Plaintiff's other arthritis-related impairments. (See Tr. 27).[7] As the ALJ noted, treatment notes from February 2021, indicate that Plaintiff demonstrated "notable subjective and functional improvement" after she began taking Humira as treatment for her rheumatoid arthritis. (See Tr. 27 (citing Tr. 1532); see also 1532 (treatment note indicating Plaintiff was taking Humira to treat her rheumatoid arthritis), 1542 (treatment note indicating "notable subjective and functional improvement")). The ALJ also noted that in December 2021, Plaintiff denied any persistent joint pain, morning stiffness, or edema in her joints. (Tr. 27). The ALJ further noted that physical examination during that same time found no swelling or limitations in Plaintiff's range of motion. (Tr. 27). The ALJ ultimately concluded that Plaintiff's arthritis was not a severe impairment because the medical record regarding Plaintiff's arthritis does not support more than minimal limitations in her ability to perform basic work activities. (Tr. 27). Plaintiff's argument simply ignores the ALJ's discussion regarding Plaintiff's severe impairments, including the ALJ's discussion of the impairment highlighted by Plaintiff.

---

[7] Arthritis is defined as "inflammation of a joint or a state characterized by inflammation of the joints." Thomas Stedman, Stedman's Medical Dictionary 75490 (arthritis), Westlaw (database update Nov. 2014). Rheumatoid arthritis is a type of arthritis. See Ella W. v. Kijakazi, No. 21-cv-122, 2022 WL 1421369, at *9 (N.D. Ind. May 4, 2022); Baiett v. Berryhill, No. 16-cv-467 (GJF), 2017 WL 5952190, at *3 n.5 (D.N.M. Nov. 30, 2017). Rheumatoid arthritis is "a generalized disease, occurring more often in women, which primarily affects connective tissue; arthritis is the dominant clinical manifestation, involving many joints, especially those of the hands and feet, accompanied by thickening of articular soft tissue, with extension of synovial tissue over articular cartilages, which become eroded; the course is variable but often is chronic and progressive, leading to deformities and disability." Thomas Stedman, Stedman's Medical Dictionary 75730 (rheumatoid arthritis), Westlaw (database update Nov. 2014); see Eaton v. Astrue, No. 10-cv-258, 2012 WL 399350, at *1 (W.D. Pa. Feb. 7, 2012) (quoting Stedman's Medical Dictionary).

Although Plaintiff characterizes her argument as asserting that the ALJ failed to include all severe impairments, Plaintiff, in making this argument, disregards the ALJ's actual discussion regarding which of Plaintiff's impairments qualifies as a severe impairment, summarizes those portions of the evidence in the records which she believes is supportive of and consistent with finding her rheumatoid arthritis to be a severe impairment, and asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ when he considered the same evidence. (See Plf.'s Mem. [Docket No. 9]). Plaintiff's argument here lacks any assertion that the ALJ actually failed to consider the evidence to which Plaintiff now points. (See Id. at 19–20). Plaintiff instead takes issue with the evidence the ALJ chose to credit. (See Id.).

The Court may not, however, reverse the ALJ's decision simply because substantial evidence supports an opposite conclusion. See Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Grindley v. Kijakazi, 9 F.4th 622, 627 (8th Cir. 2021). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ. See Woolf, 3 F.3d at 1213; Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). Instead, the Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" Milam, 794 F.3d at 983 (citations omitted) (emphasis added); Grindley v. Kijakazi, 9 F.4th 622, 627 (8th Cir. 2021). Such is the present case now before the Court.

Plaintiff merely argues that the ALJ, upon consideration of the evidence related to Plaintiff's rheumatoid arthritis, should have reached a different conclusion, i.e., that Plaintiff's rheumatoid arthritis was a severe impairment. Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different conclusion than the ALJ. The

12

applicable standards of review preclude the Court from taking such action here. See Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213; Grindley, 9 F.4th at 627.

To be clear, Plaintiff does not offer any substantive argument contending that the record as a whole lacks substantial evidence to support the ALJ's decision regarding the severity of Plaintiff's rheumatoid arthritis. Instead, Plaintiff's argument is that there is also substantial evidence in the record that supports a finding that Plaintiff's rheumatoid arthritis was a severe impairment. However, as already noted above, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the decision of the ALJ, then the Court must affirm the decision. See Grindley, 9 F.4th at 627; Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009).

Although Plaintiff may perceive evidence in the record which supports the conclusion that her rheumatoid arthritis is a severe impairment, the record now before the Court when considered as a whole also contains substantial evidence which supports that ALJ's decision regarding Plaintiff's arthritis-related impairments are not severe impairments. Therefore, the Court must affirm the ALJ's decision. See Grindley, 9 F.4th at 627; Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug, 578 F.3d at 813. "The fact that there was some medical evidence supporting [Plaintiff's] position concerning the severity of her symptoms does not mean that the ALJ's decision was not supported by substantial evidence." Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Fentress v. Berryhill, 854 F.3d 1016, 1021 (8th Cir. 2017)).

**B. Listing 12.05**

Plaintiff next argues that reversal of the decision to cease her benefits is warranted because the ALJ failed to adequately address why Plaintiff no longer met or medically equaled Listing 12.05. (See Plf.'s Mem. [Docket No. 9] at 21–22). Plaintiff does not argue that the ALJ failed to consider Listing 12.05 or that the ALJ failed to consider certain evidence in his consideration of the relevant listings; Plaintiff argues only that the ALJ failed to adequately explain why Plaintiff no longer medically equaled Listing 12.05. (See Id.).

As noted above, Plaintiff was previously approved to receive benefits based on the conclusion that she medically equaled Listing 12.05. Because that finding constitutes the comparison point decision in the present case, the ALJ was required as part of the sequential analysis to determine if Plaintiff continued to medically equal Listing 12.05 or if Plaintiff medically equaled any other relevant listing. As part of his underlying decision, the ALJ concluded that Plaintiff did not medically equal Listed 12.05 or any other relevant listing. (Tr. 23–26).

The discussion specifically addressing Listing 12.05 in the ALJ's March 20, 2024, decision is sparse. The ALJ specifically mentions Listing 12.05 in his discussion regarding whether medical improvement had occurred and his discussion determining Plaintiff's medically determinable impairments. (Tr. 26).[8] In a different part of the decision the ALJ discussed whether Plaintiff met or medically equaled any other relevant listing, but that discussion did not

---

[8] In considering Plaintiff's medically determinable impairments, the ALJ generally discussed Plaintiff's consultive examinations and concluded with the following: "The diagnosis of an intellectual disorder under listing 12.05 is not confirmed by this record, despite the various consultative psychological evaluations discussed above. In addition, the overall record does not show significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the areas of mental functioning." (Tr. 22). In the step determining whether there had been medical improvement, the entirety of the ALJ's discussion is as follows: "The medical evidence supports a finding that, by July 1, 2019, there had been a decrease in medical severity of the impairments, as the record does not document a listing level of impairment under section 12.05." (Tr. 26).

specifically mention Listing 12.05, although the discussion did include consideration of the elements required to meet or medically equal Listing 12.05. (Tr. 23–26).

In the present case, it is a close call as to whether the ALJ adequately explained his conclusion that Plaintiff no longer medically equaled Listing 12.05. The ALJ's only discussion specifically mentioning Listing 12.05 is entirely conclusory. However, the ALJ's discussion of the other relevant listings includes listings which have the same underlying considerations found in Listing 12.05, and the ALJ did fully discuss those considerations. Put differently, the ALJ's more fulsome discussion regarding the other relevant listings (which Plaintiff does not challenge) applies with equal force to Listing 12.05 because those other relevant listings require demonstration of the same limitations as Listing 12.05.

The Court need not, however, resolve this question because even if the ALJ erred by failing to provide sufficient discussion specifically mentioning Listing 12.05, that error was harmless. In other words, Plaintiff has failed to demonstrate that the alleged error here would have any bearing on the ALJ's ultimate decision that Plaintiff's disability ended on July 1, 2019, and that she had not again become disabled since that date.

It is well settled that harmless error review is applicable to social security administrative appeals, Shinseki v. Sanders, 556 U.S. 396, 409 (2009), and that a harmless error does not warrant remand. Byes v. Astrue, 687 F.3d 913, 917–18 (8th Cir. 2012). It is the plaintiff who bears the burden of demonstrating harm. Shinseki, 556 U.S. at 409. To demonstrate such harm in a social security administrative appeal, a plaintiff must "explain[] . . . how the . . . error to which [s]he points could have made any difference" in the ALJ's ultimate decision. See Id. at 413. To do so, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012) (citing Van Vickle v.

Astrue, 539 F.3d 825, 830 (8th Cir. 2008); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003)).

In the present case, Plaintiff fails to make any assertion, indication, or argument that the ALJ would have reached a different conclusion regarding the cessation of benefits if he had provided further discussion specifically mentioning Listing 12.05 or further discussion as to why Plaintiff no longer equaled Listing 12.05. In fact, Plaintiff fails to make any assertion that such a discussion by the ALJ would have altered any aspect of the ALJ's ultimate decision. Plaintiff merely asserts that the ALJ failed to adequately explain their decision, without further elaboration as to the substance of what is allegedly missing. This falls well short of Plaintiff's burden of demonstrating harm. See, e.g., Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016).

Moreover, the Court's review of the record in the present case, indicates that the ALJ would not have reached a different conclusion even if he had provided further discussion that specifically mentioned Listing 12.05 or further discussion regarding why Plaintiff no longer equaled Listing 12.05. The ALJ's discussion of the considerations underlying the other relevant listings patently demonstrates the ALJ's reasonings as to why Plaintiff no longer equaled Listing 12.05.

A claimant is found to meet or equal Listing 12.05 if they satisfy the requirements of subsection A or B. Those requirements are as follows:

> 12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:
> A. Satisfied by 1, 2, and 3 (see 12.00H):
>> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

16

> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> OR
>
> B. Satisfied by 1, 2, and 3 (see 12.00H):
>
> > 1. Significantly subaverage general intellectual functioning evidenced by a or b:
> >
> > > a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
> > > b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
> >
> > 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> >
> > > a. Understand, remember, or apply information (see 12.00E1); or
> > > b. Interact with others (see 12.00E2); or
> > > c. Concentrate, persist, or maintain pace (see 12.00E3); or
> > > d. Adapt or manage oneself (see 12.00E4); and
> >
> > 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.05.

Although the ALJ did not specifically mention Listing 12.05 when discussing the other relevant listings, the ALJ's discussion of the other relevant listings does specifically cover the requirements of Listing 12.05 because those requirements overlap between the relevant mental listings. The ALJ discussion of these overlapping requirements patently demonstrates that the ALJ would not have reached a different conclusion even if he had provided further discussion that specifically mentioned Listing 12.05 or further discussion as to why Plaintiff no longer equaled Listing 12.05.

Paragraph B of Listing 12.05 is illustrative of this point. To meet or medically equal Listing 12.05 through Paragraph B, a claimant's impairments, considered singly or in combination, must demonstrate extreme limitations of one, or marked limitations of two, of the

four relevant areas of mental functioning.[9] However, in the present case, the ALJ, in his discussion of other relevant listings, determined that Plaintiff had only moderate limitations in each of these categories and based on that finding, concluded that because Plaintiff's "mental impairments do not cause at least one 'extreme' limitation or two 'marked' limitations, the 'paragraph B' criteria are not satisfied." (Tr. 26).[10] The ALJ's conclusion here shows that even if the ALJ had included a more robust discussion of Listing 12.05 specifically, the ALJ would not have reached a different conclusion, and Plaintiff would have received the same unfavorable decision.[11]

In summation, even if the ALJ erred by not providing further discussion that specifically mentioned Listing 12.05 or further discussion as to why Plaintiff no longer equaled Listing 12.05, that error was harmless because even if the ALJ had provided that further discussion it would have been redundant to the ALJ's detailed consideration of other overlapping listings and the Plaintiff "would have received the same 'not disabled' determination." Tasha W. v. Berryhill, No. 17-cv-4933 (KMM), 2019 WL 1170666, at *4 (D. Minn. Mar. 13, 2019); see Byes, 687 F.3d at 917; Hensley, 352 F.3d at 357; Bridgette W. v. Kijakazi, 20-cv-201 (PJS/BRT), 2021 WL 3206847, at *2 (D. Minn. July 29, 2021). Thus, the alleged error here was harmless and it does not require remand.

---

[9] These four areas are (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

[10] Importantly, Plaintiff does not challenge the ALJ's findings regarding the Paragraph B criteria. (See Plf.'s Mem. [Docket No. 9]).

[11] The same is true for Paragraph A of Listing 12.05. Simply put, "Paragraph A does not apply to Plaintiff because the record establishes that Plaintiff was able to participate in standardized testing of her intellectual functioning." Hampton v. Kijakazi, No. 20-cv-1340 (RLW), 2022 WL 4365670, at *6 (E.D. Mo. Sept. 21, 2022) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.05). Indeed, throughout her argument, Plaintiff concedes she can function at a level required to participate in standardized testing of intellectual functioning by relying on the results of such testing in support of her various arguments. (See, e.g., Plf.'s Mem. [Docket No. 9] at 22). Plaintiff's ability to function at a level required to participate in standardized testing of intellectual function means she cannot satisfy Paragraph 12.05(A)(1) which is required to meet the criteria of Paragraph A. Similarly, Plaintiff cannot meet the criteria for Paragraph A(2) because as the ALJ noted, Plaintiff's mental health impairments only moderately impaired Plaintiff's ability to attend to her own personal care needs, (Tr. 25–26), and Plaintiff does not challenge this finding by the ALJ, (see Plf.'s Mem. [Docket No. 9]).

### C. Medical Opinions

Plaintiff next argues that remand is required because the ALJ failed to assess all medical opinions in the record. (Plf.'s Mem. [Docket No. 9] at 23–24). Specifically, Plaintiff asserts that although the ALJ assessed opinions from Drs. Freyberger, Van Noord, and Schneider, the ALJ failed to assess the opinions from Drs. Reed, Schumacher, Warner, Williams, and Lace. (Id.).[12]

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (quoting Wagner v. Astrue, 499 F.3d 842, 847 (8th Cir. 2007)). In doing so, the ALJ is required to consider all medical opinions from acceptable medical sources. See 20 C.F.R. § 404.1527; Colon Medina v. Comm'r of Soc. Sec., 351 F. Supp. 3d 295, 300 (W.D.N.Y. 2018) (citing 20 C.F.R. § 416.927(c)). An ALJ's failure to discuss or assess a medical opinion from an acceptable medical source may represent legal error. See, e.g., Robin A. v. Comm'r of Soc. Sec., No. 20-cv-6645 (EAW), 2022 WL 593451, at *4 (W.D.N.Y. Feb. 28, 2022) (collecting cases); Colon Medina, 351 F. Supp. 3d at 303 (citing Reiber v. Berryhill, No. 14-cv-978, 2017 WL 1370994, at *1 (W.D.N.Y. Apr. 17, 2017)).

In the present case, the ALJ failed to provide any discussion assessing the medical opinions from Drs. Reed, Schumacher, Warner, Williams, and Lace. The ALJ erred in failing to assess those medical opinions. However, the Court must again determine whether the ALJ's error warrants remand or is otherwise harmless error.

As noted above, an ALJ's harmless error does not warrant remand, and it is the plaintiff who bears the burden of demonstrating harm. Shinseki, 556 U.S. at 409; Byes, 687 F.3d at 917–

---

[12] Plaintiff also asserts that the ALJ failed to assess the "non-examining source opinions from DDS." (Id.). Plaintiff does not, however, specific which opinions to which she is referring or point to the location of those opinions in the record. Moreover, her assertion that the ALJ failed to assess opinions from the non-examining sources is not factually supported by the record because the ALJ in fact assessed those opinions and assigned them "great weight." (Tr. 30).

19

18. To demonstrate the required harm, the plaintiff must show how correction of the error could have resulted in the ALJ reaching a different conclusion. Byes, 687 F.3d at 917 (citing Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003).

Here again, Plaintiff fails to make any assertion, indication, or argument that the ALJ would have reached a different conclusion regarding the cessation of benefits if he had specifically discussed the medical opinions from Drs. Reed, Schumacher, Warner, Williams, and Lace. Indeed, Plaintiff fails to make any assertion that the ALJ's assessment of these medical opinions would have altered the ALJ's decision in any way. In fact, Plaintiff fails to even argue that the ALJ's decision would have been altered in any way if he fully credited any of the highlighted opinions. It is Plaintiff's burden to demonstrate harm, and her failure to even argue the existence of harm falls well short of her burden. This failure is fatal to her argument here. See, e.g., Johnson v. Saul, 446 F. Supp. 3d 29, 39 (W.D.N.C. 2020).

Moreover, the Court's review of the record in the present case, indicates that the ALJ would not have reached a different conclusion even if he had specifically addressed each of the at-issue opinions. Each of the medical opinions Plaintiff highlights is consistent with the ALJ's RFC determination, contains opinions which are less restrictive than the ALJ's RFC determination, or largely irrelevant to the ALJ's determination. For example, while the opinions from Drs. Schumacher, Williams, and Lace are relevant to whether Plaintiff met or equaled a listing, the opinions from these medical professionals each specifically opine that Plaintiff fails to meet or medically equal any listing, including Listing 12.05. (Tr. 57–58, 109–113, 138–

139).[13] Moreover, Dr. Warner's opinion[14] regarding Plaintiff's RFC largely mirror's the ALJ's RFC determination without any indication from Dr. Warner that Plaintiff's impairments warrant an RFC more restrictive than the ALJ's RFC determination. (Compare Tr. 27 with Tr. 1651–1652). Because the at-issue medical opinions "would not reduce Plaintiff's RFC even if given the highest weight, the Court finds [a failure to discuss them] to be a harmless error." Johnson v. Saul, 446 F. Supp. 3d 29, 39 (W.D.N.C. 2020).

Simply put, even if the ALJ had specifically assessed each of the at-issue medical opinions and even if the ALJ had credited those opinions, the record lacks any indication that the ALJ would have reached a different conclusion regarding the cessation of Plaintiff's benefits.[15] Thus, the alleged error regarding the ALJ's failure to discuss or assess the medical opinions of Drs. Reed, Schumacher, Warner, Williams, and Lace was a harmless error. See Johnson, 446 F. Supp. 3d at 39; Tasha W., 2019 WL 1170666, at *4; Byes, 687 F.3d at 917; Hensley, 352 F.3d at 357; Bridgette W., 2021 WL 3206847, at *2. Thus, remand is not warranted.

## V.  Conclusion

The Court's review of the record indicates that the ALJ's Residual Functional Capacity decision, as well as, the ultimate decision that Plaintiff's disability ended on July 1, 2019, and that Plaintiff had not again become disabled since that date were all supported by substantial evidence in the record as a whole. Specifically, on the Court's review of the record as a whole, the undersigned concludes that the ALJ's decision that medical improvement related to

---

[13] In fact, Dr. Schumacher's opinion specifically criticizes the medical opinion of Dr. Freyberger who opined that Plaintiff's impairments necessitated limitations greater than those imposed in the ALJ's RFC determination. (Tr. 59–60).

[14] Dr. Warner's opinion is the only one of the at-issue opinions which contains a medical opinion regarding the specific functional limitations underlying an RFC determination.

[15] As for Dr. Reed, the Consultation Examination Report does not contain a medical opinion regarding Plaintiff's functional limitations beyond the diagnosis. (Tr. 816–821). More importantly, the Consultation Examination Report is dated April 2, 2004, and Plaintiff fails to provide any indication as to how that report is relevant to the ALJ's inquiry into Plaintiff's RFC since July 1, 2019.

Plaintiff's ability to work had occurred, his decision to discount Plaintiff's subjective complaints, and his decision that Plaintiff no longer equaled any relevant listing were each supported by substantial evidence in the record. Moreover, the ALJ's RFC determination and his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were also supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.   Plaintiff's request for relief, [Docket No. 9], be **DENIED**, as set forth above;

2.   Defendant's request for relief, [Docket No. 10], be **GRANTED**.

Dated:  June 29, 2026                               s/Leo I. Brisbois
                                                    Hon. Leo I. Brisbois
                                                    United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).